UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ALBANE,

              Petitioner,                      Case No. 15-cv-11423
                                                      Honorable Mark A. Goldsmith

v.

MARY BERGHUIS,

              Respondent.
_____/

**OPINION & ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

Petitioner Michael Albane, currently in the custody of the Michigan Department of Corrections, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his first-degree felony murder conviction. Mich. Comp. Laws § 750.316(1)(b). The petition raises four claims. For the reasons explained below, the Court denies the petition. The Court denies a certificate of appealability and grants Petitioner leave to proceed on appeal in forma pauperis.

**I. BACKGROUND**

Petitioner's conviction arises from the from the death of Richard Colson. On November 20, 2008, Colson was severely beaten in a drug sale gone wrong. The prosecution presented evidence that Petitioner, Troy Timarac, and Jared Kienbaum arranged to meet with Colson in a liquor store parking lot under the pretense of purchasing prescription medicine from him. Instead, they brutally beat Colson and stole the drugs from him. 3/31/11 Jury Trial Tr. at PageID.886-889 (Dkt. 25-17). Colson was taken to a hospital several hours after the beating. 4/4/11 Jury Trial Tr.

1

at PageID.1238 (Dkt. 25-19). He remained in the ICU on life support until his death on December 3, 2008. 4/1/11 Jury Trial Tr. at PageID.1038-1043 (Dkt. 25-18).

Timarac and Petitioner were tried jointly before separate juries. Kienbaum testified pursuant to a plea agreement. 3/31/11 Jury Trial Tr. at PageID.873. Kienbaum occasionally lived with Petitioner, and they often used illegal drugs together. Id. at PageID.881. Timarac often purchased pills from Colson, which he would then sell to Kienbaum. Id. at 883-884. On November 20, 2008, Kienbaum heard Timarac talking about stealing pills from Colson. Id. at 889. Timarac arranged to meet Colson in a liquor store parking lot. Id. at 891. Timarac drove to the liquor store with Petitioner and Kienbaum. Id. at 894. While waiting for Colson, the men strategized that they would take the pills from Colson without paying for them and then drive away. Id. at 898.

When Colson arrived, he approached and entered Timarac's van, sitting in the backseat beside Kienbaum. Id. at 900-901. Timarac drove away from the liquor store. Id. at 904. Kienbaum testified that Colson, who had a bottle of pills in his hand, appeared nervous and tried opening the door. Id. at 903-904. Petitioner, who was seated in the front passenger seat, turned around and hit Colson three or four times in the face. Id. at 904. Petitioner also choked Colson. Id. at 905. After he stopped the van, Timarac tried to pull Colson out of the van by his legs. Id. at 907. Colson was holding on to the seat, so Kienbaum put a lighter in his own hand and punched Colson twice in the face. Id. at 908.

Eventually, Timarac pulled Colson out of the car onto the ground. Id. at 909. Timarac and Petitioner hit and kicked defendant while he was on the ground. Id. at 910. Kienbaum gathered pills that had fallen out in the van and Timarac took pills from Colson's pockets. Id. at 911-912. The men left Colson sitting on the road covered in blood and drove to Petitioner's house, where they divvied up the pills among the three of them. Id. at 914-916. They then took the van to the car wash to clean blood from inside the van. Id. at 917.

Dr. Elango Edhayan testified as an expert in emergency medicine and trauma surgery. 4/1/11 Jury Trial Tr. at PageID.1025-1026. Colson arrived at St. John's Hospital on November 20, 2008. Id. at 1027. Doctors performed a craniotomy to remove a blood clot. Id. at 1027-1030. In addition to the head injury, Colson suffered blunt force injury to his kidney and several rib fractures. Id. at 1042. Colson's condition continued to deteriorate, and he suffered multiple seizures. Id. at 1041-1042. Colson died on December 3, 2008. Edhayan concluded that the injury to Colson's brain caused his death, but he also acknowledged that medication and illegal drugs could have caused the blood clot. Id. at 1042, 1065.

Faris Wright saw Colson after the assault on the evening of November 20th. He noticed that Colson's nose was swollen, one side of Colson's head appeared bashed in and bloody, and Colson seemed to have difficulty maintaining his balance. Id. at 1078-80. Colson appeared to be in a state of shock and had slurred speech. Id. at 1079-1080. Wright, Colson, and two other men, Steven Martin and Tony Tyree, went to a house to look for the men who had stolen Colson's pills. Id. at 1083-1085. They brought a rifle with them. Id. at 1085. Tyree knocked on the door, where an older woman, Petitioner's mother, answered. Id. at 1087-1088. After realizing the men they were looking for were not home, they returned to Wright's house. Id. at 1089-1090.

Colson's girlfriend Janice Blackwell saw Colson at Wright's house after the beating. 4/4/11 Jury Trial Tr. at PageID.1231-1232. He appeared dazed and had blood all over him and a bump on the side of his head. Id. at 1232-1233. At one point, Colson left the home along with Wright and two other men for "maybe 12 minutes or less," according to Blackwell's testimony. Id. at 1233-1236. A short time after the men returned, she took Colson to the hospital. Id. at 1239-1240.

Dr. Francisco Diaz, a forensic pathologist, performed the autopsy on December 5, 2008. Id. at 1283. He testified that Colson suffered a closed head trauma, which led to bleeding into the covering of the brain. Id. at 1287-1291. This was the cause of death. Id. at 1293. Colson also

3

suffered bruises on his left side which caused bleeding around his kidney and spleen, two fractured ribs, and lacerations to his forehead and upper lip. Id. at 1291-1292.

The jury found Albane to be guilty of first-degree murder and not guilty of second-degree murder. 4/11/11 Jury Trial Tr. at PageID.1757 (Dkt. 25-24). The court issued a mandatory life sentence. Sentencing Tr. at PageID.1770 (Dkt. 25-25).

Petitioner filed an appeal of right in the Michigan Court of Appeals, arguing that the prosecution presented insufficient evidence to sustain his conviction, the trial court erred in telling the jury that Petitioner was charged with first-degree murder, and the judgment of sentence incorrectly listed the conviction as first-degree premeditated murder rather than first-degree felony murder. The Michigan Court of Appeals affirmed Petitioner's conviction and remanded for a correction of the judgment of sentence. People v. Albane, No. 304331, 2013 WL 1137130 (Mich. Ct. App. March 19, 2013). The Michigan Supreme Court denied Petitioner's application for leave to appeal, People v. Albane, 495 Mich. 912 (Mich. Dec. 23, 2013), and denied Petitioner's motion for reconsideration. People v. Albane, 495 Mich. 951 (Mich. Feb. 28, 2014).

Petitioner then filed a petition for a writ of habeas corpus and, at the same time, a motion to hold the petition in abeyance while he exhausted ineffective assistance of counsel claims in state court (Dkt. 2). The Court granted the motion and administratively closed the case (Dkt. 5).

Petitioner filed a motion for relief from judgment in the trial court, raising claims of ineffective assistance of trial and appellate counsel (Dkt. 25-29). The trial court denied the motion (Dkt. 25-30). The Michigan Court of Appeals and Michigan Supreme Court both denied Petitioner leave to appeal. People v. Albane, No. 331207 (Mich. Ct. App. Apr. 28, 2016); People v. Albane, 888 N.W.2d 56 (Mich. 2017).

Petitioner returned to this Court asking that the stay be lifted and filing an amended petition. (Dkt. 8). The Court lifted the stay and directed Respondent to file an answer and the state court record (Dkt. 12).

Petitioner seeks habeas relief on these grounds:

1. Petitioner is entitled to a new trial where there is insufficient evidence to find for the conviction of felony murder.

2. Petitioner is entitled to a new trial where the jury found him guilty of first-degree murder rather than felony murder.

3. Petitioner was denied the constitutional right to the effective assistance of trial counsel where trial counsel (i) failed to argue that there was an intervening cause of death; (ii) failed to object to improper jury instruction; and (iii) failed to inform Petitioner of his right to testify.

4. Petitioner was deprived of his Sixth Amendment right to appellate counsel, where appellate counsel ignored significant, obvious, and meritorious issues during direct review, which were far stronger than those issues raised on appeal.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." Shoop v. Hill, 139 S. Ct 504, 506 (2019). A federal court may grant habeas corpus relief only if the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of," Supreme Court precedent that was "clearly established" at the time of the adjudication. 28 U.S.C. § 2254(d).

A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams v. Taylor, 529 U.S. 362, 411 (2000). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652 (2004)). "If this standard is difficult to meet, that is because it was meant to be." Id. at 102. In order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim

5

"was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id. Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III. DISCUSSION

#### A. Sufficiency of the Evidence

In his first claim, Petitioner challenges the sufficiency of the evidence to support his conviction. Petitioner maintains that the prosecution failed to prove the malice element of first-degree felony murder beyond a reasonable doubt. This claim is denied because the Michigan Court of Appeals' holding that sufficient evidence was presented was not contrary to or an unreasonable application of Supreme Court precedent.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." McGuire v. Ohio, 619 F.3d 623, 631 (6th Cir. 2010) (citing Brown v. Konteh, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Brown, 567 F.3d at 205 (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." Id. In short, "deference should

be given to the trier-of-fact's verdict, as contemplated by Jackson; [then,] deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." Tucker v. Palmer, 541 F.3d 652, 656 (6th Cir. 2008) (citation omitted). The Jackson standard is "exceedingly general" and Michigan courts are, therefore, afforded "considerable leeway" in its application. Davis v. Lafler, 658 F.3d 525, 535 (6th Cir. 2011).

Under Michigan law, the elements of first-degree felony murder are: (1) the killing of a human being; (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm would be the probable result; (3) while committing, attempting to commit, or assisting in the commission of any of the felonies enumerated in Mich. Comp. Laws § 750.316. People v. Smith, 478 Mich. 292, 318-319 (Mich. 2007). Malice may be inferred from "'[t]he facts and circumstances of the killing,' the use of a deadly weapon, or 'evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm.'" Albane, 2013 WL 1137130 at *1 (quoting People v. Carines, 460 Mich. 750, 759 (1999)).

The Michigan Court of Appeals held that the evidence was sufficient to establish malice:

> Viewing the facts in a light most favorable to the prosecution, the jury could have easily inferred malice from the circumstances surrounding Colson's death. At the very least, defendant's actions during the assault show defendant intended to do great bodily harm. Defendant and his codefendants, Jared Kienbaum and Troy Timarac, planned to rob Colson after he entered their van to engage in a drug transaction. Defendant initiated the unprovoked physical violence by turning around and hitting Colson in the face three or four times. Colson, at this point, was already bleeding from his face. This by itself was enough "evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." Carines, 460 Mich. at 759. However, defendant continued the attack by choking Colson from behind. Once Timarac had pulled Colson out of the van, defendant again hit Colson while he was in the street. Timarac, Kienbaum, and defendant then left Colson bleeding in the street and did not call an ambulance. Therefore, a reasonable jury could have determined that defendant had the requisite intent to commit felony murder.

Id.

The Michigan Court of Appeals did not unreasonably reject Petitioner's sufficiency of evidence claim. Petitioner argues that the evidence presented failed to satisfy the intent element of felony-murder because he, at worst, agreed to participate in a beating and punched the victim in the head. He claims that no evidence was presented to show that he intended to kill or knew that any other participant intended to kill the victim. But Michigan law did not require the prosecutor to prove that Petitioner possessed an intent to kill. Instead, the prosecutor had to prove an intent to kill, do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm would be the probable result.

If the jury credited Jared Kienbaum's testimony as true, Petitioner's conduct included hitting the Colson in the face multiple times, choking Colson, and punching him again while Colson was lying on the ground and co-defendant Timarac was kicking Colson. 3/31/11 Jury Trial Tr. at PageID.905-910. Faris Wright saw Colson shortly after the attack and described Colson's appearance this way: "[H]is face was dislocated and one side of his head was bashed in like he had a lot blood spattering out of his head." 4/1/11 Jury Trial Tr. at PageID.1078. An autopsy revealed that Colson's death was caused by blunt force trauma to his head. All of this evidence was sufficient to establish Petitioner's intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm would be the probable result. Habeas relief is denied with respect to this claim.

## B. Due Process Claim

In his second claim, Petitioner alleges that his right to due process was violated because the jury returned a verdict of first-degree murder, but he had been charged with felony murder.[1]

---

[1] Respondent argues that this claim is procedurally defaulted. The Court will, in the interest of judicial economy, bypass the procedural default question and proceed directly to the merits of this claim. Lambrix v. Singletary, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel [addressing the merits of a claim] if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").

Petitioner bases this claim on several references by the trial court judge to a first-degree murder charge rather than a felony-murder charge. Just prior to jury selection, the judge informed the jury venire that Petitioner was charged with first-degree murder. 3/30/11 Jury Trial Tr. at PageID.666 (Dkt. 25-16). During jury instructions, the trial court referred to the charge as "first degree murder," rather than felony murder, several times. 4/8/11 Jury Trial Tr. at PageID.1708, 1716 (Dkt. 25-23).

The Michigan Court of Appeals found no error. First, the court of appeals held that it was an accurate statement of state law to refer to felony murder as first-degree murder. Albane, 2013 WL 1137130 at *2 (citing Mich. Comp. Laws § 750.316(1)(b)). The court of appeals also dismissed Petitioner's argument that the trial court's instructions caused the jurors to be confused about the difference between first-degree premeditated murder and felony murder or that they convicted Petitioner on an uninstructed charge. Id. The court of appeals reasoned as follows:

> The trial court read the jury the instructions for the charged offenses, which were felony murder and second-degree murder. During its deliberations, the jury indicated that it was confused by felony murder. The trial court read the jury instructions on felony murder two more times. The jurors indicated that they understood. The trial court did not instruct the jury on first-degree premeditated murder. The jury checked "guilty" under the heading "Murder–First Degree Felony" on the verdict form. Therefore, the jury clearly convicted defendant of first-degree felony murder, not first-degree premeditated murder.
>
> Finally, defendant correctly notes that the Judgment of Sentence lists his conviction as first-degree premeditated murder instead of first-degree felony murder. However, without defendant showing the jury actually convicted him of the wrong offense, this is nothing more than a clerical error. The proper remedy is to remand for the trial court to amend the Judgment of Sentence.

Id.

The Court must defer to the state court's holding that the trial court correctly referred to the felony-murder offense as a first-degree murder offense. See Davis v. Straub, 430 F.3d 281, 291 (6th Cir. 2005). The trial court's recitation of the elements of first-degree felony murder were correct and Petitioner points to no requirement that a court must always refer to a felony-murder

9

charge as "first-degree felony murder" rather than "first-degree murder." Because the trial court's comments and instructions were appropriate under state law, Petitioner cannot show that the instructions rendered his trial fundamentally unfair. The Court denies habeas corpus relief on this claim.

### C. Ineffective Assistance of Trial Counsel Claim

In his third clam, Petitioner raises three ineffective assistance of trial counsel claims. He argues that counsel was ineffective for failing to: (1) investigate and argue there was an intervening cause of death; (2) object to improper jury instructions; and (3) inform Petitioner of his right to testify. Respondent argues that these claims are procedurally defaulted and meritless.

#### 1. Procedural Default

Respondent argues that the ineffective assistance of trial counsel claims are procedurally defaulted. Federal habeas relief is precluded on claims that were not presented to the state courts in accordance with the state's procedural rules because AEDPA requires federal courts to allow state courts a fair opportunity to resolve an alleged constitutional violation. See Wainwright v. Sykes, 433 U.S. 72, 85-87 (1977); Wade v. Timmerman-Cooper, 785 F.3d 1059, 1068 (6th Cir. 2015). "A habeas petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default." Guilmette v. Howes, 624 F.3d 286, 290 (6th Cir. 2010) (en banc).

The Court must look to the last reasoned state court opinion to determine the basis for the state court's rejection of Petitioner's ineffective assistance of counsel claims. Id. at 291. Here, the last reasoned state court opinion is the trial court's opinion denying Petitioner's motion for relief from judgment. See Order Denying Defendant's Motion (Dkt. 25-30). The trial court relied upon Mich. Ct. Rule 6.508(D)(2) and Mich. Ct. Rule 6.508(D)(3). Id. Rule 6.508(D)(3) precludes

a state court from granting a motion for relief from judgment if the defendant "alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence . . . unless the defendant demonstrates (a) good cause for failure to raise such grounds on appeal . . . and (b) actual prejudice." Mich. Ct. R. 6.508(D)(3). A dismissal under Rule 6.508(D)(3) invokes the procedural default rule. Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005). Michigan Court Rule 6.508(D)(2), on the other hand, "is a 'relitigation' rule under which the state court will not grant relief if the petitioner alleges claims that were decided against the petitioner on a prior appeal." Peoples v. Lafler, 734 F.3d 503, 511 (6th Cir. 2013). Where a state court invokes Michigan Court Rule 6.508(D)(2) and Michigan Court Rule 6.508(D)(3) to deny a claim without sufficient explanation as to how a claim could have "already been litigated on direct appeal and that [the petitioner] lost his claim by failing to raise it on direct appeal," the order is ambiguous, and it does not provide an adequate and independent state ground foreclosing federal habeas review. Id. at 511. Because the state court's order is ambiguous, the Court will address the merits of Petitioner's ineffective assistance of trial counsel claims.

### 2. The Merits

To establish ineffective assistance of counsel, Petitioner must demonstrate (i) that counsel's performance was deficient, and (ii) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668 (1984). "The standards created by Strickland and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." Harrington, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

### a. Intervening Cause of Death

First, Petitioner argues that trial counsel was ineffective in failing to present an intervening cause of death defense. The trial court denied this claim on the merits without expounding on its

11

reasons for doing so (Dkt. 25-30). The trial court's decision is nevertheless entitled to AEDPA deference. See Harrington, 562 U.S. at 102.

Petitioner's intervening-cause-of-death argument is based upon the theory that another person(s) assaulted Colson between the time of the assault by Petitioner and the time Colson went to the hospital. The theory relies upon information from Janice Blackwell and Petitioner's mother, Mary Hibbs. Petitioner claims that Tibbs saw an altercation between Colson and three other men sometime after Petitioner's assault of Colson. Petitioner's mother executed an affidavit stating:

> In November of 2008, I was at my home located in Detroit. My son Michael Albane . . . also resided there. Around 6:30 p.m. I heard a knock at my door. I opened the door to an older white male asking for Mike, Tony and Troy. Beyond the man on my porch I could see three black males in a small red car parked in the driveway. They also appeared to be much older than my son Michael. I told the man that they didn't live here. I felt very uncomfortable that these older men were looking for my son who was only nineteen at the time, so I told my boyfriend Lamont to watch out the window with me to make sure they left. While watching out the window, I observed the two men in the front seat of the car arguing and shoving each other. I could see that the man in the passenger seat had something in his hands that resembled a rifle or a pipe. After 30 seconds of fighting with each other they left my driveway.

See Affidavit of Mary Hibbs, dated 9/1/15, at PagedId.94 (Dkt. 9).

Petitioner argues that Blackwell's testimony supports Tibbs' proffered testimony. Blackwell testified that, on the night of the beating, Colson, Wright, Tony Tyree, and Steven Martin briefly left the Wright home with a rifle. The men returned to Wright home less than fifteen minutes later. He argues that, during the time they were absent, Petitioner suffered injuries at the hands of these friends. Petitioner maintains counsel failed to investigate or call Hibbs as a witness because he believed her relationship to Petitioner would have caused the jury to discount her testimony. Petitioner argues that his mother's and Blackwell's testimony, considered together, would have persuaded the jury that someone else caused Colson's death.

Petitioner fails to overcome the presumption that counsel's decision was reasonable trial strategy. Petitioner was seen with gruesome injuries, including blood spattering out of his head

12

where it was bashed in, before he went to Albane's house. 4/1/11 Jury Trial Tr. at PageID.1078. Petitioner went to Albane's house with friends and allies. There is no evidence or explanation why one of Petitioner's three friends would have injured him. Further, Hibbs did not witness anyone strike Colson in the head. In light of this evidence, it was not unreasonable for counsel to conclude that testimony from Petitioner's mother would have been inherently incredible. Petitioner fails to overcome the doubly deferential standard of review applicable to ineffective assistance of counsel claims. Habeas relief is denied on this claim.

### b. Failure to Object to Jury Instruction

Next, Petitioner claims that defense counsel was ineffective in failing to object to the trial court's aiding and abetting jury instruction or to the trial court's response to a jury question. Petitioner maintains that these instructions improperly permitted the jury to infer Petitioner's intent to commit felony murder from the intent to commit larceny. The trial court denied Petitioner's ineffective assistance of counsel claim finding that Petitioner failed to rebut the presumption that counsel's actions resulted from trial strategy. Order Denying Defendant's Motion at PageID.2021. The Court holds that the state court's decision was not contrary to, or an unreasonable application of, Strickland.

Before 1980, Michigan law allowed a jury to find the malice element of felony murder satisfied based solely on a finding that the defendant intended to commit the underlying felony. See People v. Dumas, 454 Mich. 390 (Mich. 1997). In 1980, the Michigan Supreme Court held that the malice element of felony murder is satisfied only if the defendant (1) intended to kill, (2) intended to inflict great bodily harm, or (3) acted with wanton and willful disregard of the likelihood that the natural tendency of the defendant's behavior was to cause death or great bodily harm. People v. Aaron, 409 Mich. 672, 728-29 (Mich. 1980). Petitioner argues that the trial court incorrectly instructed the jury in accordance with pre-1980 law. The trial court held that counsel was not ineffective in failing to object to the instructions. The Court holds that the trial court's

13

decision denying this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.

The trial court instructed the jury that, to find Petitioner guilty of first-degree felony murder, the prosecution had to prove that: (1) he intended to kill, (2) he intended to do great bodily harm to the deceased, or (3) he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions. 4/6/11 Jury Trial Tr. at PageID.1692 (Dkt. 25-22). The trial court instructed the jury on the offense of larceny in accordance with the Michigan model jury instructions. See id.; CJI2d 23.1. The trial court then read CJI2d 8.1, including an instruction that specific intent is necessary for a finding of guilt based upon an aiding and abetting theory. 4/6/11 Jury Trial Tr. at PageID.1696-1697. Later, in response to a jury question asking whether a time limit applies to the idea of intent, the court gave the following instruction:

> To help means to perform acts or give encouragement before or during the commission of the crime that aides or assist in the in commission.
>
> At the time of giving aide or encouragement the defendant must have intended to the commission of the larceny . . .
>
> The defendant must have been either committing or helping someone else to commit the crime of larceny. To help means to perform acts or given encouragement before or during the commission of the crime that aides or assist[s] in the commission or encourages in the commission at the time of giving aide or encouragement the defendant must have intended the commission of the crime.

4/11/11 Jury Trial Tr. at PageID.1747.

While the supplemental instruction focused on offense of larceny, neither that instruction nor the preceding instructions allowed the jury to infer Petitioner's intent to commit felony murder from his intent to commit larceny. The instructions closely tracked the model criminal jury instructions and clearly set forth the intent necessary for a felony murder conviction. Counsel cannot be deemed ineffective for failing to make a futile or meritless objection. See Coley v. Bagley, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally

14

unreasonable nor prejudicial"). Because the instructions were appropriate under Michigan law, as shown by use of the model instructions, the trial court reasonably concluded that counsel was not ineffective for failing to object. The state court's conclusion was not contrary to, or an unreasonable application of, Strickland. Therefore, habeas relief is also denied on this claim.

### c. Right to Testify

Next, Petitioner argues that counsel was ineffective in failing to advise him of his right to testify.

A criminal defendant has a constitutional right to testify in his own behalf. Rock v. Arkansas, 483 U.S. 44, 51-53 (1987). A trial court has no duty to inquire sua sponte whether a defendant knowingly, voluntarily, or intelligently waives his right to testify. United States v. Webber, 208 F. 3d 545, 551-552 (6th Cir. 2000). A state trial judge is not constitutionally required to specifically address a criminal defendant to explain that he has a right to testify and ask him whether he wishes to waive that right. Siciliano v. Vose, 834 F. 2d 29, 30 (1st Cir. 1987). Waiver of the right to testify may be inferred from a defendant's conduct. Gonzales v. Elo, 233 F.3d 348, 357 (6th Cir. 2000).

Even in jurisdictions that do not simply infer a defendant's waiver of his right from his silence at trial, a "barebones assertion by a defendant, [even one] made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary . . . to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim." Underwood v. Clark, 939 F.2d 473, 476 (7th Cir.1991). Accord United States v. Martinez, 181 F.3d 627, 628 (5th Cir. 1999) ("Courts have observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic.").

15

Here, Petitioner did not alert the trial court at any time that he wanted to testify. The record contains no indication that Petitioner was unaware of his right to testify or that he disagreed with the decision not to testify. Petitioner's assertion, with no supporting evidence, that his attorney did not inform him of his right to testify is insufficient to overcome the presumption that he willingly agreed not to testify and that his counsel rendered effective assistance. Gonzales, 233 F.3d at 357.

### d.   Ineffective Assistance of Appellate Counsel Claim

In his third claim, Petitioner argues his appellate attorney was ineffective in failing to raise his ineffective assistance of trial counsel claims on direct review. A defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 754 (1983). "[T]actical choices regarding which issues to pursue on appeal are 'properly left to the sound professional judgment of counsel.'" Williams v. Lafler, 494 F. App'x 526, 530 (6th Cir. 2012) (quoting United States v. Perry, 908 F.2d 56, 59 (6th Cir.1990)).

Because the Court has determined that Petitioner's underlying ineffective assistance of trial counsel claims lack merit, appellate counsel was not ineffective for failing to raise them. Bennett v. Brewer, 940 F.3d 279, 286 (6th Cir. 2019), cert. denied, 206 L. Ed. 2d 477 (2020). Accordingly, the Court will deny habeas corpus relief on this claim.

### III.  CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation and

16

internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of Petitioner's claims. The Court will, therefore, deny a certificate of appealability.

If Petitioner chooses to appeal the Court's decision, he may proceed in forma pauperis, because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

### IV. Conclusion

For the reasons set forth above, the Court denies the petition for writ of habeas corpus, declines to issue a certificate of appealability, and grants leave to appeal in forma pauperis.

SO ORDERED.

Dated: August 6, 2020  
    Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 6, 2020.

s/Karri Sandusky  
Case Manager